UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RANDALL EHLERS,<br><br>              Plaintiff,<br><br>    vs.<br><br>CITY OF RAPID CITY, a municipal corporation, its agents, subsidiaries and employees; SCOTT DIRKES, individually and in his official capacity; JIM HANSEN, individually and in his official capacity; ROBERT RYBAK, individually and in his official capacity; AND JOHN DOE, 1-10;<br><br>              Defendants. | 5:12-CV-05093-JLV<br><br><br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This is a 42 U.S.C. § 1983 action against the City of Rapid City and multiple police officers in their official and individual capacities, for the Fourth Amendment claims of use of excessive force, unlawful arrest, and malicious prosecution and state law claims for assault, battery, false imprisonment, abuse of process, malicious prosecution, and intentional infliction of emotional distress. The plaintiff claims that the defendants are joint tortfeasors and are subject to punitive damages. Defendants Robert Rybak, Scott Dirkes, Jim Hansen, and the City of Rapid City move for summary judgment on all claims.

## STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The record is viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-moving party's favor. See Peterson v. Kopp, 754 F.3d 594, 598 (8th Cir. 2014). The moving party has the burden to show the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Once the moving party has met its burden, the non-moving party must use affidavits or other evidence to set forth specific facts showing the existence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Fed.R.Civ. P. 56(e). If a genuine issue of material fact is found, a motion for summary judgment will be denied.

## MATERIAL FACTS

On December 21, 2010, the Plaintiff, Randall Ehlers ("Ehlers"), along with his wife, three children, and friends traveled to Rapid City for a Rush hockey game at the Civic Center. (Doc. 50, p. 1). During the third period of the hockey game, Mr. Ehlers' wife, Joyce Ehlers, attempted to buy beer in the hospitality area, but was refused because she did not have her identification card on her. (Doc. 50, p.2). At that time, one of her sons, Derrik, purchased a beer. (Doc. 50, p. 3). A short time later, while Mrs. Ehlers and Derrik were with others at a table in the hospitality area, the table was somehow jostled and a beer spilled on Mrs. Ehlers. (Doc. 50, p. 3). She was then asked to leave by

Civic Center staff and despite her efforts to explain the situation, she was escorted out by the staff. (Doc. 50, p. 3-4).

Mrs. Ehlers' children were displeased at the way their mother was being treated and proceeded to yell profanities at the staff. (Doc. 50, p. 4). The children were also told to leave the Civic Center. (Doc. 50, p.4). It is disputed as to how the Ehlers' three children "engaged" the Civic Center staff and security guards, but undisputed that the children did "engage" staff and security. (Doc. 50, p. 5).

Sergeant Chris Hall from the Rapid City Police Department was the first to arrive on scene and intervened in the "engaging" behavior. (Doc. 50, p. 5). Two of the Ehlers' children "engaged" Sgt. Hall. (Doc. 50, p. 5). Sgt. Hall testified during his deposition that the children rushed towards him, so he pushed them away from him and in turn was pushed twice by Desirae, the Ehlers' female child. He further testified that they were yelling and screaming at him. (Doc. 46, Exhibit 6, p. 34-35). Tyler Kaitfors, one of the Ehlers' children who was engaging Sgt. Hall, testified during his deposition that he merely asked Sgt. Hall for his name and badge number because he was upset at how the situation was being handled. (Doc. 52, Exhibit 7, p. 16-17). Derrik, the Ehlers' other son, got into a confrontation with a bystander and Sgt. Hall had to break it up. (Doc. 50, p. 6).

At some point after the altercations described above, Sgt. Hall radioed for assistance. (Doc. 50, p. 6). It is disputed whether he sounded as if he was yelling for help in response to a volatile situation or requesting assistance in a

tone not unlike his usual request for assistance in transporting soon to be arrestees. (Doc. 50, p. 6). Officer Hansen arrived soon after Sgt. Hall requested assistance. (Doc. 46, Exhibit 7, p. 46).

Sgt. Hall directed Officer Hansen to arrest Derrik Ehlers. (Doc. 50, p. 7). It is disputed whether Derrik was informed he was under arrest. (Doc. 50, p. 7). It is also disputed whether Derrik was agitated and intoxicated or docile and compliant. (Doc. 50, p. 7). The dash cam shows Derrik appearing calm and compliant. (Doc. 52, Exhibit 19)  Sgt. Hall placed Tyler Kaitfors under arrest. (Doc. 50, p. 7). Officer Matt McCroden arrived. (Doc. 50, p. 7). It is disputed whether he was confronted by Desirae Ehlers and pushed by her or whether he walked up to Desirae, threw her on the ground, and handcuffed her. (Doc. 50, p. 7 and Doc. 52, Exhibit 4, p. 26).

When the confrontation between his family and Civic Center staff began, Mr. Ehlers was sitting in the stands watching the hockey game. (Doc. 50, p. 8). Someone told him that there was a confrontation outside involving his family. (Doc. 50, p. 8). When Mr. Ehlers reached the exterior door of the Civic Center, he saw his son Derrik in handcuffs. (Doc. 50, p. 8).

Nearly all of the remaining facts are in dispute and will be set forth in accordance with an inference in Mr. Ehlers' favor. Mr. Ehlers approached Officer Hansen to ask questions relating to the arrest of his son. (Doc. 50, p. 9). The video shows Mr. Ehlers approach is slow and curious manner while holding a ladies' purse.  (Doc. 52, Exhibit 19).  The video depicts a confused parent trying to find out why his son is being arrested.  (Doc. 52, Exhibit 19).

Officer Hansen told Mr. Ehlers to step back to the curb. (Doc. 52, Exhibit 1, p. 32). Officer Hansen is seen in Plaintiff's Exhibit 19, pointing toward the Civic Center and the direction from which Mr. Ehlers came. Mr. Ehlers appears to step closer to the officer, but possibly to a curb right near Officer Hansen. (Doc. 50, Exhibit 19). Mr. Ehlers continues asking questions about his son. (Doc. 52. Exhibit 1, p. 32). Officer Hansen again points toward the Civic Center. Mr. Ehlers can no longer be seen on the video, so it is assumed that he "stepped back onto the curb" near Officer Hansen. (Doc. 52, Exhibit 1, p. 34). Officer Hansen told Mr. Ehlers that he was going to count to three and Mr. Ehlers had to be on "the far sidewalk." (Doc. 52, Exhibit 1, p. 38). Mr. Ehlers was not agitated or acting intoxicated and had initiated contact with Officer Hansen in a non-threatening manner. (Doc. 50, p. 10). Mr. Ehlers was not told that he was under arrest. (Doc. 50, p. 13.) Mr. Ehlers complied with Officer Hansen's request, put his hands in the air and walked toward the far sidewalk. (Doc. 52, Exhibit 19 and 20). While enroute to the sidewalk, Officer Dirkes who had just arrived on scene, told Mr. Ehlers to put his hands behind his back. (Doc. 52, Exhibit 19). As Mr. Ehlers was walking toward "the far sidewalk" as he was instructed by Officer Hansen, he appeared unaware of Officer Dirkes presence until right before Officer Dirkes utilizes a takedown. Mr. Ehlers was possibly unaware of Officer Dirkes' alleged demand that Mr. Ehlers stop walking to the sidewalk. (Doc. 52, Exhibit 20). Officer Dirkes then utilized a takedown technique on Mr. Ehlers. (Doc. 52, Exhibit 20). Mr. Ehlers then rolled onto his back and lifted his right arm in the air. (Doc. 52, Exhibit 20). Officer Dirkes

5

rolled Mr. Ehlers over and Mr. Ehlers was on his hands and knees holding his glasses in his right hand. (Doc. 52, Exhibit 20). This takedown allegedly caused injury to Mr. Ehlers's arms and he was unable to comply with further orders to put his hands behind his back. (Doc. 50, p. 15).

Officer Hall assisted Officer Dirkes by putting pressure on Mr. Ehlers' left shoulder with his leg and getting Mr. Ehlers on his stomach. (Doc. 52, Exhibit 20). Officer Ganser held on to Mr. Ehlers' feet and legs. (Doc. 52, Exhibit 20) Trooper Rybak arrived and forcefully took Mr. Ehlers' left arm out from under him. (Doc. 52, Exhibit 20). Officer Dirkes readied the taser to "drive stun" Mr. Ehlers and placed the prongs against the bare skin of Mr. Ehlers' lower back. (Doc. 50, p. 16). Someone yelled, "Let him have it." The safety switch on the taser was on, so the taser did not fire the first time Officer Dirkes attempted to shock Mr. Ehlers. (Doc. 50, p. 16-17). Officer Dirkes flipped off the safety and went back to shock Mr. Ehlers. (Doc. 50, p. 17). At this time, Officer Hansen felt as if Mr. Ehlers was not resisting and told Officer Dirkes not to tase Mr. Ehlers. (Doc. 50, p. 17). Mr. Ehlers contends that he was tased. (Doc. 50, p. 17). Officer Dirkes claimed he moved the taser just in time and did not shock Mr. Ehlers. (Doc. 50, p. 17-18).

Soon after, Mr. Ehlers was fully handcuffed and arrested for resisting arrest, in violation of SDCL § 22-11-4, and obstructing a police officer, in violation of SDCL § 22-11-6. Mr. Ehlers claims he suffered injuries to his shoulders and left knee. On December 23. 2010, a medical evaluation stated that Mr. Ehlers was suffering from pain in his left shoulder. (Doc. 52, Exhibit

14, p. 1). He had no shoulder injuries in the past. (Doc. 52, Exhibit 14, p. 1).

He also had redness from the taser. (Doc. 52, Exhibit 14, p. 2). As of January

20, 2011, approximately a year since the incident, a physical therapy

evaluation revealed that Mr. Ehlers still suffered from pain, a rotator cuff tear,

and weakening in his left shoulder. (Doc. 52, Exhibit 13). As of December 20,

2012, almost two years after the incident, the physical therapist thought Mr.

Ehlers may have a "permanent condition with continued intermittent issues

from a documented rotator tear." (Doc. 52, Exhibit 13). Additionally, the

physical therapist stated that "it would be reasonable as well to state that he is

at maximum medical improvement." (Doc. 52, Exhibit 13).

## DISCUSSION

### I.  CLAIMS AGAINST THE DEFENDANTS DIRKES, HANSEN AND RYBECK IN THEIR OFFICIAL CAPACITIES

A suit against a government officer in his official capacity is functionally

equivalent to a suit against the employing governmental entity. <u>Veatch v.

Bartels Lutheran Home,</u> 627 F.3d 1254, 1257 (8th Cir. 2010).  Therefore, it is

proper to dismiss the official capacity claims as redundant.  <u>Id</u>.  The Plaintiff

has conceded in his response brief that the doctrine of sovereign immunity

precludes recovery against Officer Dirkes, Officer Hansen and Trooper Rybak in

their official capacities.  (Doc. 49, p. 4).  Therefore, it is respectfully

recommended that the official capacity claims be dismissed with prejudice.

## II. CLAIMS AGAINST THE DEFENDANTS DIRKES, HANSEN AND RYBECK IN THEIR INDIVIDUAL CAPCITIES.

### A. § 1983- Excessive Force

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and law" by any person "under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory." 42 U.S.C. § 1983. However, "[q]ualified immunity shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Partlow v. Stadler, 774 F.3d 497, 501 (8th Cir. 2014). The Court is to employ a two-step inquiry to determine whether the official is entitled to qualified immunity: "(1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation." Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

An excessive force claim stemming from the arrest of a free citizen invokes the protections of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). An officer does not use excessive force if the amount of force the officer used was objectively reasonable. Graham, 490 U.S. at 396-97.

The factfinder must balance "'the nature and the quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interest at stake." Id. (quoting United States v. Palace, 462 U.S. 696, 703 (1983)). The reasonableness of a particular use of force depends on

the totality of the circumstances including the following three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Reasonableness is judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

Until June 2011, it was "an open question in [the Eighth Circuit] whether an excessive force claim require[d] some minimum level of injury." Peterson v. Kopp, 754 F.3d 597, 601 (citing Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011)). Since the Chambers decision, excessive force does not require a particular level of injury. Now, it is clearly established, that the inquiry is "whether the force used to effect a particular seizure is reasonable." Peterson, 754 F.3d at 601. But, because the incident at hand occurred before the Chambers decision, this principle was not clearly established so as to inform the actions of the officers in the present case.

With this framework in mind, the court will consider the excessive use of force claim brought against each officer separately.

### 1. Excessive Use of Force- Officer Dirkes

The following facts, when viewed in the light most favorable to the Plaintiff are relevant to the excessive use of force claim against Officer Dirkes. Officer Dirkes arrived on scene after responding to a call for assistance at the Civic Center. He had no knowledge of what he was walking into, but also had no advance notice of volatile activity. Immediately prior to Officer Dirkes'

arrival, Mr. Ehlers approached Officer Hansen in an effort to determine why his son was arrested. Mr. Ehlers approached Officer Hansen in a non-threatening manner. Officer Hansen instructed Mr. Ehlers to step toward the curb. Mr. Ehlers was complying with Officer Hansen's order when Officer Dirkes arrived on scene. Upon arrival, Officer Hansen pointed toward Mr. Ehlers who was walking toward the curb. It is apparent from the video that Officer Dirkes instructs Mr. Ehlers to put his hands behind his back. Officer Dirkes utilized a "take down" and brought Mr. Ehlers down, injuring him. Mr. Ehlers was not fleeing, not violent, and it is unclear that his hand motion was an attempt to resist. Soon after, Officer Dirkes tased Mr. Ehlers. This tasing left two marks on Mr. Ehlers' lower back. As a result of the encounter with law enforcement, Mr. Ehlers suffered injuries to his shoulder and left knee.

In <u>Rohrbough v. Hall</u>, 586 F.3d 582 (8th Cir. 2009), the Eighth Circuit found that a genuine issue of material fact existed as to the excessive force claim against an officer even though the plaintiff pushed the officer. The plaintiff was identified by a store owner as a suspect of a recent disturbance in her store. An officer approached the plaintiff and the plaintiff greeted the officer and raised his hands. The plaintiff did not "make a fist or assume a fighting stance." <u>Id.</u> at 585. The officer pushed the plaintiff and the plaintiff returned the push. The officer then punched the plaintiff in the face, pushed the plaintiff, utilized a take down, landed on top of the plaintiff, and handcuffed him. The court found that the plaintiff's push could have been inconsequential and a material fact existed as to "whether the force used [by the officer] was

'objectively reasonable in light of the facts and circumstances confronting' the officer." Id. at 586.

In Peterson v. Kopp, 754 F.3d 594 (8th Cir. 2014) the Eighth Circuit considered conduct similar to that of Mr. Ehlers and Officer Dirkes.  In Peterson, an officer confronted some young adults smoking a hookah pipe at a bus stop and questioned why they were there if they were not getting on any busses. He told the individuals to leave and most of them left. One individual, Peterson, remained to disassemble the hookah pipe. He then took out his phone and asked the officer for his badge number. The officer refused to give him the badge number. Peterson, who was sitting on some bicycle lockers, said he had a right to the badge number. The officer grabbed Peterson's arm and pulled him off of the bicycle lockers. Peterson told the officer he couldn't handle him like that and the officer pepper sprayed Peterson, pushed him into the lockers, handcuffed him, and put him in the back of the police car. The court found that, while the circumstances weighed in favor of finding excessive use of force, the injury Peterson suffered was *de minimis*. Id. at 600. He didn't suffer any permanent damage from the pepper spray and only suffered discomfort for 5-7 days after the arrest. Id. at 597. The officer was entitled to qualified immunity because, at the time of the incident, it was not yet clearly established that *de minimis* injury did not foreclose a Fourth Amendment excessive force claim.

Similar to Rohrbough, a reasonable jury could find that Officer Dirkes' actions in taking down Mr. Ehlers and tasing him were unreasonable under the

circumstances, despite any perceived or actual resistance on Mr. Ehlers' part. When considering the totality of the circumstances including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight, there are sufficient facts to allow the case to be decided by a jury. The severity of the crime was a minor, to say the least. As discussed below, the officers lacked probable cause to arrest Mr. Ehlers. He was exhibiting no criminal activity. At worst, Mr. Ehlers took 22 seconds to comply with Officer Hansen's direction to walk to the far side of the sidewalk. Mr. Ehlers wasn't told he was under arrest, or that he would be arrested. He wasn't attempting to evade arrest by flight. Observing Mr. Ehler's demeanor in the video, it depicts a middle aged gentleman who isn't posing an immediate threat to the safety of the officers or others. The video clearly shows other officers standing around the scene at the time Mr. Ehlers is talking to Officer Hansen. The other officers' demeanor and lack of apparent concern about Mr. Ehlers indicates that he wasn't a threat to the safety other officers. It is only after the arrival of Officer Dirkes and the subsequent "take down" that the intensity of the scene is escalated. Officer Dirkes' actions, when viewed in a light most favorable to Mr. Ehlers, were not objectively reasonable.

However to overcome qualified immunity, not only does Mr. Ehlers have to show that Officer Dirkes violated a constitutional right, but that right must have been clearly established at the time the right was violated. As stated above, <u>Chambers</u> was decided after this incident. Officer Dirkes did not have

fair warning that causing *de minimis* injury to an individual could support an excessive force claim. Therefore, Officer Dirkes is entitled to qualified immunity if Mr. Ehlers' only suffered a *de minimis* injury. Here, the facts when considered in a light most favorable to Mr. Ehlers is that he sustained a rotator cuff strain to his left shoulder and an electrical shock from the taser. A rotator cuff strain amounts to more than a *de minimus* injury. There is a genuine issue of material fact as to the reasonableness of Officer Dirkes' actions and the cause of Mr. Ehlers' shoulder injury. It is respectfully recommended that Officer Dirkes' motion for summary judgment on this issue be denied.

### 2. Excessive Use of Force- Officer Hansen

Officer Hansen's only role in securing Mr. Ehlers was to attempt to grab Mr. Ehlers' right wrist. That is when Officer Hansen felt as if Mr. Ehlers was no longer resisting arrest. Mr. Ehlers does not mention Officer Hansen in the excessive force portion of his opposition motion for summary judgment. It is unclear how the excessive force claim would extend to Officer Hansen. It is respectfully recommended that the motion for summary judgment as to the excessive force claim as it relates to Officer Hansen be granted.

### 3. Excessive Use of Force- Trooper Rybak

As seen on Trooper Rybak's dash cam, Trooper Rybak responded to a call for assistance at the Civic Center. He arrived to find several officers on one individual and that individual's left side uncovered. In attempting to secure Mr. Ehlers' left arm that Mr. Ehlers could not himself get free, Trooper Rybak thought that Mr. Ehlers was resisting Trooper Rybak's efforts to put Mr. Ehlers'

hands behind his back. In securing Mr. Ehlers' left arm, Trooper Rybak may
have caused injury to Mr. Ehlers' shoulder.

Even if an individual's motive is innocent, if an officer can reasonably
interpret the individual's actions as resistance, then the officer may use the
amount of force that would be reasonable to effect an arrest. Carpenter v.
Gage, 686 F.3d 644, 650 (8th Cir. 2012) (no excessive force used when officers
mistakenly believed plaintiff was resisting and tased plaintiff who had trouble
breathing and instead of giving his hands to the officers to handcuff he reached
for the couch to get himself up). Even if an individual is unable to comply, if
the officers mistakenly, but reasonably believe that the individual is resisting,
they may use the amount of force necessary to effect arrest. Janis v.
Biesheuvel, 428 F.3d 795 (8th Cir. 2005) (not excessive force when officers
engaged in car chase of what they thought was a drunk driver, pried plaintiff's
fingers from his steering wheel and pulled plaintiff from his car and then
realized plaintiff was suffering from diabetic shock).

From Trooper Rybak's point of view, considering the totality of the
circumstances at the time, upon his arrival on scene Mr. Ehlers was on the
ground with his left arm under his body.  Trooper Rybak mistakenly, but
reasonably believed that Mr. Ehlers was resisting the officer's efforts to secure
his left arm.  Therefore, as a matter of law, Trooper Rybak's actions were not
objectively unreasonable.  It is respectfully recommended that summary
judgment be granted in Trooper Rybak's favor on the excessive use of force
claim.

**B.    § 1983- Unlawful Arrest**

A warrantless arrest is permissible under the Fourth Amendment if a police officer has probable cause to arrest. <u>Royster v. Nichols</u>, 698 F.3d 681, 688 (2012). An officer has probable cause if "the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." <u>Id</u>. The facts and circumstances are viewed in the totality, considering the "information available to the officer," at the time of the arrest. <u>Id</u>. A police officer only needs "arguable probable cause" to make an arrest in order to receive qualified immunity. <u>Peterson</u>, 754 F.3d at 598 (citing <u>Bernini v. City of St. Paul</u>, 665 F.3d 997, 1003 (8th Cir. 2012). Such probable cause exists "where an officer mistakenly arrests a suspect believing it is based in [sic] probable cause if the mistake is objectively reasonable." <u>Peterson</u>, 754 F.3d at 598 (citing <u>Ulrich v. Pope Cnty</u>, 715 F.3d 1054, 1059 (8th Cir. 2013).

Obstructing a law enforcement officer is codified under SDCL 22-11-6 and states

> Except as provided in §§ 22-11-4 and 22-11-5, any person who, by using or threatening to use violence, force, or physical interference or obstacle, intentionally obstructs, impairs, or hinders the enforcement of the criminal laws or the preservation of the peace by a law enforcement officer...acting under color of authority... is guilty of obstructing a law enforcement officer....

S.D. Codified Laws § 22-11-6. Obstruction does not require an "actual or technical assault on the officer," but there "must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his

duty." State v. Wiedman, 321 N.W.2d 539, 541 (S.D. 1982) (appellant was standing directly in the officer's path and refusing to move thereby disrupting the officer's attempt to disperse a crowd) (quoting State v. Knudson, 131 N.W. 400, 402 (S.D. 1911); see also State v. Hodges, 631 N.W.3d 206 (S.D. 2001).

In Hodges, a police officer pulled over a car for traveling at an excessive speed. When the vehicle stopped, a female passenger got out of the car and proceeded to a nearby building. The officer told the woman to stop and then repeated his command several times with increasing volume. The woman appeared to walk faster and entered the building. By the time she got to the door, the officer was yelling for her to stop. The officer entered the building and a bartender told the officer that the woman ran toward the bathroom. The officer pounded on the bathroom door and identified himself. After receiving no reply, he entered the bathroom and saw the woman in an open stall. He could not see her hands and ordered her to show them to him. The woman turned away from the officer and backed toward the corner of the stall. The officer lost sight of her and entered the stall. The woman had her pants unbuttoned and partially down. He ordered her to pull up her pants and when she refused, he pulled up her pants for her. The two engaged in a struggle as the officer attempted to force the woman to show him her hands. After that, he placed her under arrest. The Court found that the officer "observed events that created probable cause for an arrest of obstruction of a law enforcement officer." Id. at 212.

SDCL § 22-11-4 states the law for resisting arrest. It states that "[a]ny person who intentionally prevents or attempts to prevent a law enforcement officer, acting under color of authority, from effecting an arrest of the actor or another, by:

(1)     Using or threatening to use physical force or violence against the law enforcement officer or any other person; or

(2)     Using any other means which creates a substantial risk of causing physical injury to the law enforcement officer or any other person;

is guilty of resisting arrest.

S.D. Codified Laws § 22-11-4. An individual can be guilty of resisting arrest "only if they (1) [intend to resist arrest] and either (2a) threaten to use force or violence or (2b) create a risk of physical injury." State v. Sullivan, 673 N.W.2d 288, 291 (S.D. 2003) (evidence against defendant was insufficient because there was no evidence of a threat to use force or violence). A threat is "[a]n expression of an intention to inflict pain, injury, evil, or punishment." Id. Merely resisting attempts to be taken into custody is not enough. See id. The court will consider each claim against the officers individually.

### 1. § 1983 Arrest- Officer Dirkes

Officer Dirkes claims that he was merely an assisting officer and, as an assisting officer, probable cause is not the standard used to analyze his actions in arresting Mr. Ehlers. When viewed in the light most favorable to Mr. Ehlers, Officer Dirkes was not ordered to arrest Mr. Ehlers. Officer Hansen was off to the right, across from the Civic Center telling Mr. Ehlers to get back to the sidewalk near the Civic Center. Officer Hansen pointed to the Civic Center

17

multiple times and then pointed away from the Civic Center and then pointed in the direction of Mr. Ehlers. It is not clear from the video what Officer Hansen means by these points. The dash cams do not conclusively show Officer Hansen ordering Officer Dirkes to arrest Ehlers. Mr. Ehlers denied that Officer Hansen ordered Officer Dirkes to place Mr. Ehlers under arrest. (Doc. 50, p. 13). When Officer Dirkes arrived on scene, he immediately began walking toward Mr. Ehlers commanding him to put his hands behind his back.

Officer Dirkes cites to <u>Mitchell v. Shearrer</u>, 729 F.3d 1070, 1073 (8th Cir. 2013) and one unpublished District of Maryland decision citing to a published District of Maryland decision for the proposition that probable cause is not the standard of liability when assisting officers arriving late to a scene with no personal knowledge of the basis for the arrest. In <u>Mitchell</u>, the assisting officers were entitled to qualified immunity because when they arrived on scene, the arresting officer was already engaged in a physical struggle with the plaintiff. The situation at hand is clearly different.

There is a genuine issue of material fact as to which officer made the probable cause analysis and decision to arrest Mr. Ehlers. A jury is entitled to find that Officer Dirkes made his own decision to arrest Mr. Ehlers. Even if Officer Hansen instructed Officer Dirkes to arrest Mr. Ehlers, neither defendant has cited and the Court has not found, any controlling precedent stating that the assisting officer standard applies when an officer orders another officer to arrest a suspect. Thus, Officer Dirkes is not entitled to this "assisting officer"

standard and a genuine issue of material facts exists as to whether he made an independent decision to arrest Mr. Ehlers.

As to the existence of arguable probable cause, there are genuine issues of material fact to be resolved by a jury. Probable cause to arrest an individual for obstruction requires "physical interference or obstacle, intention[al] [obstruction, impairment, or hindrance of] the enforcement of the criminal laws or the preservation of the peace by a law enforcement officer. Resisting arrest requires a threat of physical force or violence, actual physical force or violence, the risk of physical injury, and the intention to resist arrest.

Officer Dirkes walked toward Mr. Ehlers and told him to put his hands behind his back. It is disputed as to whether Mr. Ehlers heard Officer Dirkes and whether he had time to comply with Officer Dirkes' order. While and/or immediately after the take down, Mr. Ehlers also raised his right arm in the air when he was falling.

This is in stark contrast to <u>Hodges</u> where the passenger of the stopped vehicle ignored the officer's commands to cooperate while walking to a building, inside the building, into the bathroom, and while in a bathroom stall. Here, it was a matter of seconds between Officer Dirkes' command and the takedown. On Mr. Ehlers' facts, it was not objectively reasonable for Officer Dirkes to believe that Mr. Ehlers committed an offense. A jury could to find that Mr. Ehlers was not intending to hinder or impair Officer Dirkes ability to enforce the law. A jury could also find that Mr. Ehlers' raised arm was an involuntary response to falling as a result of being taken down and not an attack on Officer

Dirkes. Thus, genuine issues of material fact exist and it is respectfully recommended that summary judgment as to Section 1983 unlawful arrest by Officer Dirkes be denied.

## 2. § 1983- Officer Hansen

Officer Hansen argues that he had arguable probable cause to arrest Mr. Ehlers. Viewing the facts in the light most favorable to Mr. Ehlers, genuine issues of material fact remain. Officer Hansen was arresting Derrik Ehlers when Mr. Ehlers came to ask questions about his son's arrest in a non-aggressive manner. Officer Hansen motioned for Mr. Ehlers to go back to the sidewalk near the Civic Center and told him to get onto the curb. Mr. Ehlers stepped to the curb near Officer Hansen and Officer Hansen continued to motion for Mr. Ehlers to go back to the sidewalk near the Civic Center. Officer Hansen then began his countdown. Mr. Ehlers complied by beginning to walk back to the Civic Center and raised his hands in a sign acknowledging the futility of speaking with the officer. Mr. Ehlers did not demonstrate an intention of preventing Officer Hansen from arresting his son, but was merely attempting to discern why his son was being arrested.

In Wiedman and Hodges there were "acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty." Wiedman, 321 N.W.2d 539, 541. Here, Mr. Ehlers delayed approximately 20 seconds before moving to the far sidewalk. That short of a delay leading to compliance is much different from standing directly in the officer's path, as in Wiedman, and actively preventing the officer from enforcing the law. On Mr.

Ehlers' facts, it was not objectively reasonable for Officer Hansen to believe that Mr. Ehlers intended to hinder Officer Hansen in the performance of his duties. The same is true about resisting arrest. Mr. Ehlers did not present any signs of violence or threat of violence and did not create any danger of physical injury. Before the takedown, other officers and bystanders were calmly standing around. That is not an environment that suggests Mr. Ehlers was threatening or creating a risk of physical injury. Genuine issues of material fact remain and it is respectfully recommended that the motion for summary judgment as it relates to Officer Hansen on the Section 1983 unlawful arrest claim be denied.

### 3. § 1983- Trooper Rybak

The plaintiff has abandoned a claim against Officer Rybak for wrongful arrest. (Doc. 49, p. 14).  Therefore, it is respectfully recommended that the motion for summary judgment as it relates to Defendant Rybak for unlawful arrest should be granted.

### C.    § 1983 Unlawful/Malicious Prosecution

Plaintiff asserted in count three of his Complaint a claim for Unlawful Prosecution.  The Complaint is unclear as to whether this is a claim brought under § 1983 or under state law.  The Plaintiff's brief appears to rely on state law for his claim of malicious prosecution, as it does not discuss any elements of the § 1983 unlawful prosecution claim.  The state law claim of malicious prosecution will be addressed below.

To the extent that Plaintiff seeks to bring a claim for unlawful and/or malicious prosecution claim under § 1983, the court will determine whether a

viable cause of action exists. Claims for malicious prosecution arising under the Fourth Amendment are not clearly established. <u>Harrington v. City of Council Bluffs, Iowa</u>, 678 F.3d 676, 680 (8th Cir. 2012). The United States Supreme Court in <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994) did not decide whether defendants had a Fourth Amendment right against malicious prosecution. The Court only stated that if the right existed, it "probably arises under the Fourth Amendment." <u>Id</u>. The court in <u>Harrington</u> did not decide whether the right should be established, so it remains not clearly established. It is respectfully recommended that the motion for summary judgment as it relates to the Fourth Amendment malicious prosecution claim as to Defendant Dirkes and Hansen. The plaintiff conceded that such a claim would not apply to Defendant Rybak and, so it is respectfully recommended that the motion for summary judgment be granted as to Officer Rybak.

### D.    State Law Claim- Assault and Battery

Plaintiff brought a claim against Officer Dirkes, Officer Hansen, and Trooper Dirkes for assault and battery pursuant to this court's pendent jurisdiction.  In order to prevail on the civil tort claim of assault and battery, a plaintiff must prove that the defendant: (1) intended to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact; and (2) an offensive contact with the person of the other directly or indirectly results.  <u>Stratemeyer v. Engber</u>, 649 N.W.2d 921 (S.D. 2002).  However, a law enforcement officer is protected against an assault and battery claim if his conduct is privileged. See <u>Thornton v. City of Rapid</u>

City, 692 N.W.2d 525, 529 (S.D. 2005). Privilege for an officer to use force is codified in SDCL 22-18-2 which states

> To use or attempt to use or offer to use force or violence upon or toward the person of another is not unlawful if necessarily committed by a public officer in the performance of any legal duty or by any other person assisting the public officer or acting by the public officer's direction.

S.D. Codified Laws § 22-18-2. "Under this South Dakota statutory authority, the force used by a police officer is unlawful when it becomes greater than necessary to carry out his duties." Thornton, 692 N.W.2d at 529 (trier of fact could find excessive conduct where officer chasing fleeing individuals came upon the plaintiff walking down the sidewalk and did not ask him to stop before tackling him to the ground) (citing Spenner v. City of Sioux Falls, 580 N.W.2d 606, 612 (S.D. 1998) (where officers approached armed robbery suspect with guns drawn, forcing suspect to kneel on the street, handcuffing suspect, and placing him in police vehicle, the force under the circumstances was not unreasonable).

### 1.     Officer Dirkes

It is respectfully recommended that summary judgment should be denied as to Officer Dirkes on this issue. A genuine dispute of material fact exists as to whether the force Officer Dirkes used to take down Mr. Ehlers was necessary under the circumstances. A jury could find that Officer Dirkes' warning to Mr. Ehler to put his hands behind his back, was insufficient to give Mr. Ehlers notice that he needed to stop or be brought forcefully to the ground.

Additionally, a reasonable jury could find that Officer Dirkes' use of the taser was necessary under the circumstances.

### 2.    Officer Hansen

It is respectfully recommended that summary judgment should be granted as to Officer Hansen on this issue. Officer Hansen did no more than go to grab Mr. Ehlers' right wrist and then stop. It doesn't appear that Officer Hansen used any other physical force on Mr. Ehlers.

### 3.    Trooper Rybak

It is respectfully recommended that summary judgment be granted as to Trooper Rybak. As stated above, Trooper Rybak arrived on scene at the time that Mr. Ehlers was on the ground with his left arm under his body.  Here, given Trooper's limited knowledge about the facts leading up to the take down coupled with his observations about Mr. Ehler's uncontrolled left arm that may contain a weapon, his actions and the force under the circumstances were not unreasonable.

### D.    State Law Claim – Malicious Prosecution

Mr. Ehler concedes that the claim of unlawful prosecution against Trooper Rybak should be dismissed.  (Doc. 49, p. 13).  We then turn to whether summary judgment is appropriate as to Officer Dirkes and Officer Hansen.

The elements of malicious prosecution are "1) commencement of an original criminal proceeding; 2) its legal causation by present defendant against present plaintiff, who was the defendant in the original criminal proceeding; 3) its termination in favor of the present plaintiff; 4) absence of probable cause for

the original criminal proceeding; 5) malice; and 6) damage to plaintiff." Chien ex rel Chien v. City of Sioux Falls, 393 F.Supp.2d 916, 919 (D.S.D. 2005) (citing Miessner v. All Dakota Ins. Assocs., Inc., 515 N.W.2d 198, 200 (S.D. 1994)).

Probable cause in this context "is defined as 'a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty.'" Chien, 393 F.Supp.2d at 920 (citing Miessner, 515 N.W. 2d at 202)). When the facts are in conflict and reasonable minds could differ, probable cause is a question for the jury. Chien, 393 F.Supp.2d at 920 (citing Manuel v. Wilka, 610 N.W.2d 458, 464 (S.D. 2000)).

Mr. Ehlers was charged by the Officer Dirkes and/or Hansen with obstruction of justice and resisting arrest. These charges were later dismissed. Mr. Ehlers argues that the video establishes the charges were unfounded and served merely as pretext. (Doc. 49, p. 13). However, Mr. Ehlers fails to point to any evidence in the record which would raise a question of fact as to whether Officer Hansen and Officer Dirkes acted in malice.

Accordingly, it is respectfully that the motion for summary judgment as to the state law claim of malicious prosecution should be granted as to all defendants.

### E. State Law Claims – False Imprisonment, Abuse of Process and Intentional Infliction of Emotional Distress

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp., v. Catrett</u>, 477 U.S. 317, 322 (1986). The plain language of this rule mandates granting summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> A genuine issue as to a material fact cannot exist if a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>. at 323.

Here, the defendants have moved for summary judgment on all claims. In response thereto, the Plaintiff's only argument in support of his remaining state law claim is that the defendant's affirmative defense of privilege under SDCL § 22-18-2 does not shield the defendants from liability. (Doc. 49, p. 15-16) In this section of the Plaintiff's brief, it appears that his arguments are in in support of his state law claims of assault and battery. However, there is no discussion regarding the elements of the remaining state law claims or the application of the facts thereto. This fails to meet the Plaintiff's burden to resist summary judgment. As the Eighth Circuit has noted, "[A]" party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials. . ., but must set forth specific facts showing that there is a genuine issue for trial." <u>Satcher v. University of Arkansas at Pine Bluff Bd. Of Trustees</u>, 558 F.3d 731, 734-35 (8th Cir. 2009)(citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). It is "not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact." Id. (citing Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006)).

Based on the Plaintiff's failure to adequately resist the motion to dismiss the remaining state law claims and brief the state law claims, it is respectfully recommended that summary judgment be granted as to the Plaintiff's claims of false imprisonment, abuse of process, and intentional infliction of emotions distress.

### III.    CLAIMS ASSERTING LIABILITY AS JOINT TORTFEASORS

In his Complaint, Mr. Ehlers asserts that the defendants are joint tortfeasors and should be held jointly and severally liable for Mr. Ehler's injuries. It is well settled that in §1983 actions, "liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association." Smith v. City of Minneapolis, 754 F.3d 541, 547 (8th Cir. 2014). "An officer may be held liable only for his or her own use of excessive force. Id.

Plaintiff does not dispute that this is the law. Instead, he argues that the defendants failed to intervene, for which they can be held jointly liable. Defendants Hansen and Dirkes argue that Plaintiff never pled a duty to intervene and a claim for "joint tortfeasors" fails as a matter of law.

An officer "may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of

excessive force by another official." <u>Krout v. Goemmer</u>, 583 F.3d 557, 565 (8th Cir. 2009). This is a completely separate cause of action that plaintiff failed to plead. Thus, this cause of action will not be considered.

Each officers' conduct was independently assessed by this Court and will be independently assessed by the jury. There remains a genuine issue of material fact which officer caused which injuries and to what extent. But, as a matter of law as to the Section 1983 claims, each officer is liable for his own conduct. Furthermore, this court has recommended that the only defendant with remaining claims of liability for excessive use of force, assault and battery is Officer Dirkes. Therefore, only Officer Dirkes could be found liable for the personal injuries suffered by Mr. Ehlers.

## IV.    CLAIMS AGAINST THE CITY OF RAPID CITY

Mr. Ehlers has not plead a theory of recovery or specific facts against the City of Rapid City ("the City"). In his brief, plaintiff makes clear that he wishes to assert a claim for municipal liability against the City. He then requests that the Court defer ruling on the issue until he has an opportunity to depose "the Rule 30(b) agent." (Doc. 49, p. 17). The City argues that Mr. Ehlers had several months to depose the necessary witness and was well aware that the scheduling order set the summary judgment motions deadline at September 16, 2014. The City also argues that Mr. Ehlers would not be able to establish facts supporting his <u>Monell</u> claim by interviewing the Rule 30(b) agent. He would only be able to explore the element of "tacit authorization." The City goes

on to argue that Mr. Ehlers should have explored the existence of a custom in the depositions with the officers.

A municipality may be found liable under Section 1983 "where an official custom causes an individual to suffer a constitutional harm." <u>Monell v. City Dep't of Social Servs.,</u> 436 U.S. 658, 690-91 (1978). The essential elements to show the existence "of a governmental custom of failing to receive, investigate and act upon complaints of violations of constitutional rights, a plaintiff must prove:"

1. The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
2. Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
3. The plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

<u>Thelma D. By and Through Delores A. v. Board of Educ. of City of St. Louis,</u> 934 F.2d 929, 932-933 (8th Cir. 1991).

It is recommended that the court reject the plaintiff's argument that the court should delay deciding this issue. Discovery does not have to be complete before a court may enter summary judgment. <u>Roark v. City of Hazen, Ark.,</u> 189 F.3d 758, 762 (8th Cir. 1999) (citing <u>Dulany v. Carnahan,</u> 132 F.3d 1234, 1238 (8th Cir. 1997)). Rule 56(f) of the Federal Rules of Civil Procedure "permit a party opposing summary judgment to seek a continuance and postpone a summary judgment decision until adequate discovery has been completed." <u>Roark,</u> 189 F.3d at 762 (citing <u>Dulany,</u> 132 F.3d at 1238). At the time a

continuance is sought, the party opposing summary judgment "is required to file an affidavit with the district court showing what specific facts further discovery might uncover." Roark, 189 F.3d at 762 (citing Humphreys v. Roche Biomed. Lab., Inc., 990 F.2d 1078, 1081 (8th Cir.1993)).

In Roark, the plaintiff filed a Title VII suit and the defendant moved for a motion for summary judgment. The district court granted the motion for summary judgment and the plaintiff moved for additional time to respond. The district court denied that motion. On appeal, the plaintiff argued that the district court erred in granting summary judgment before the completion of discovery. Though the plaintiff moved for a continuance, he did not submit an affidavit and "did not state what discovery was lacking or what information further discovery might unveil." Roark, 189 F.3d at 762.

Mr. Ehlers had the benefit of the entire discovery period to depose all necessary witnesses to support his Monell claim. In his opposition to summary judgment, Mr. Ehelrs informed the court that "[a]s of the date of filing this Brief, the Rule 30(b) agent has yet to be deposed. Such deposition is necessary in order for the parties to adequately respond or raise any defense as to this issue." (Doc. 49, p. 17). Mr. Ehlers did not file a motion for a continuance with an affidavit stating what information further discovery might unveil. Mr. Ehlers has provided no evidence setting forth specific facts showing the existence of a genuine issue of material fact. Thus, it is respectfully recommended that court grant the City of Rapid City's motion for summary judgment.

## V.     PUNITIVE DAMAGES

Mr. Ehlers asserts that he is entitled to punitive damages. As to the claims against the City, this court has recommended that the motion for summary judgment be granted. Thus, any analysis of the City's liability for punitive damages is moot.

As to Trooper Rybak in his official and individual capacity, this court has recommended that the motion for summary judgment be granted as to all claims against Trooper Rybak and as such, he has no liability for punitive damages.

Mr. Ehlers may be awarded punitive damages against Officer Dirkes and Officer Hansen in their individual capacities under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Schaub v. VonWald, 638 F.3d 905, 922 (8th Cir. 2011)(quoting Smith v. Wade, 461 U.S. 30 (1983)). Even in the light most favorable to Mr. Ehlers, there are no facts to support that Officer Dirkes or Officer Hansen's conduct was motivated by evil motive or intent.

Similarly, under South Dakota law, punitive damages are allowed "where the defendant has been guilty of oppression, fraud, or malice, actual or presumed. SDCL § 21-3-2. Actual malice is denied as "a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person." Harter v. Plains Ins. Co., 579 N.W.2d 625, 634 (S.D. 1998). Presumed malice is shown when a person

acts willfully or wantonly to the injury of others.  <u>Case v. Murdock</u>, 488 N.W.2d 885, 891 (S.D. 1992).  Presumed malice "implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations," <u>Dahl v. Sittner</u>, 474 N.W.2d 897, 900 (S.D. 1991), or evidenced by a "reckless disregard for one's rights."  <u>Flockhart v. Wyant</u>, 467 N.W.2d 473, 478 (S.D. 1991).  Again, the record lacks facts to allow a jury to find that Officer Dirkes and Officer Hansen acted with actual or presumed malice.

It is respectfully recommended that the defendant's motion for summary judgment on Plaintiff's claim for punitive damages.

## CONCLUSION

Therefore, based on the foregoing, the court makes the following recommendations:

1) As to the Plaintiff's claims against the Defendants in their official capacity, summary judgment be granted.

2) As to all of the Plaintiff's claims against Trooper Rybak, summary judgment be granted.

3) As to the Officer Dirkes, summary judgment be granted as to the claims of § 1983 unlawful prosecution, state law claims of unlawful prosecution, false imprisonment, abuse of process, intentional infliction of emotional distress and punitive damages.  As to the claims of § 1983 excessive use of force, unlawful arrest, and assault & battery the motion be denied.

4) As to Officer Hansen, summary judgment be granted as to the claims of § 1983 excessive use of force, § 1983 unlawful prosecution, state law

32

claims of assault & battery, unlawful prosecution, abuse of process, intentional infliction of emotional distress and punitive damages. As to the claims of § 1983 unlawful arrest the motion be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

DATED this 5th day of September, 2015.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge