UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RANDALL EHLERS,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF RAPID CITY, a municipal<br>corporation, its agents, subsidiaries<br>and employees; SCOTT DIRKES,<br>JIM HANSEN, ROBERT RYBAK,<br>individually and in their official<br>capacity; JOHN DOE 1-10,<br><br>                    Defendants. | CR. 12-5093-JLV<br><br><br>ORDER |

## INTRODUCTION

Pending before the court are the defendants' motions for summary judgment.   (Dockets 39 & 43).   The court referred the motions to Magistrate Judge Daneta Wollmann for resolution.   (Docket 58).   On September 4, 2015, Magistrate Judge Wollmann filed a report recommending the court grant the motions for summary judgment of defendants City of Rapid City and Rybak and grant in part and deny in part the remaining defendants' motion for summary judgment.   (Docket 59).   Plaintiff and defendants Scott Dirkes and Jim Hansen timely filed objections.   (Dockets 60 & 61).

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.   Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).   The court may then

"accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1).

## A.   MAGISTRATE JUDGE'S FINDINGS OF FACT

Defendants Dirkes and Hansen ("defendants") object to a number of the magistrate judge's findings of fact.   (Docket 61).   Because those objections are not separately delineated in defendants' objections, the court summarizes their objections as follows:

1.      Before the takedown, other officers and bystanders were calmly standing around.   Id. at p. 20.

2.      That it is unclear whether Officer Hansen or Officer Dirkes made the decision to arrest Mr. Ehlers.   Id. at p. 28.

Each of these objections will be separately addressed.   To the extent the remainder of the magistrate judge's statement of facts is unchallenged, those facts are adopted by the court.

For summary judgment analysis, the facts and inferences from those facts must be viewed in the light most favorable to Mr. Ehlers, the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). To put defendants' objections in context, the court must first set the background for the timeframe and substance of each objection.

On December 21, 2010, Mr. Ehlers, his wife, three adult children and friends were in Rapid City, South Dakota, to attend a Rush hockey game at the Rushmore Plaza Civic Center.   (Docket 59 at p. 2).   While Mrs. Ehlers and their

2

son, Derrik, were at a table in the hospitality area the table was somehow jostled and beer spilled on Mrs. Ehlers.   Id.   Despite her efforts to explain the situation, Civic Center staff asked Mrs. Ehlers to leave and she was escorted out of the building by the staff.   Id. at pp. 2-3.

Because they were displeased with the manner in which their mother was treated, her children began to yell profanities at the Civic Center staff.   Id. at p. 3.   These adults were instructed to leave the premises.   Id.   While it is unclear as to how these adults "engaged" the Civic Center staff, there is no question that they did "engage" the staff and security guards of the Civic Center. Id.

Rapid City Police Officer Sergeant Chris Hall was the first officer to arrive and intervene.   Id.   Two of the Ehlers children rushed toward him and he physically pushed them away.   Id.   Officer Hall testified they were yelling and screaming at him.   Id.   Tyler Kaitfors, one of the Ehlers' children who was involved with Officer Hall, testified he was merely asking for the officer's name and badge number because Tyler was upset with the manner in which the situation was being handled.   Id.   Desirae Ehlers twice pushed Officer Hall. Id.   Derrik Ehlers, a third family member, got into a confrontation with a bystander which required Officer Hall to break up that situation.   Id.

Officer Hall radioed for assistance.   Id.   Rapid City Police Officer Jim Hansen arrived on scene and Officer Hall directed him to arrest Derrik.   Id. at p. 4.   The dash camera video of one of the patrol cars shows Derrik appearing

3

calm and compliant.   Id.   Officer Hansen placed Tyler under arrest.   A third Rapid City Police Officer, Matt McCroden, arrived and placed Desirae in handcuffs.[1]

While these events were unfolding, Mr. Ehlers was watching the hockey game inside the Civic Center.   Id.   Mr. Ehlers was advised of the confrontation involving his family and when he got to the exterior doors of the Civic Center he observed Derrik in handcuffs.   Id.

A dash camera video shows Mr. Ehlers, carrying a ladies' purse, approaching Officer Hansen in a slow and curious manner.   Id.   His purpose was to ask questions relating to the arrest of his son.   Id.   Mr. Ehlers appeared to be a confused parent seeking to find out why his son was under arrest.   Id.

Officer Hansen told Mr. Ehlers to step back to the curb.   Id. at p. 5. Officer Hansen is seen on video pointing toward the Civic Center and in the direction from which Mr. Ehlers came.   Id.   Mr. Ehlers appears to step closer to Officer Hansen.   Id.   Mr. Ehlers continues to ask questions regarding his son. Id.   Officer Hansen again points toward the Civic Center.   Id.   Because Mr. Ehlers can no longer be seen on the video, it is assumed that he stepped to the curb near the officer.   Id.   Officer Hansen stated he was going to count to three and Mr. Ehlers had better be on the "far sidewalk."   Id.

_____

[1]By stipulation of the parties the court entered an order dismissing all claims against Officer McCroden.   (Docket 38).   Because Officer McCroden is not a defendant, his conduct in placing Desirae into handcuffs is not relevant to the court's analysis.

4

Mr. Ehlers did not appear agitated or intoxicated and initiated contact with Officer Hansen in a non-threatening manner.   Id.   Mr. Ehlers complied with the officer's request and can be seen putting his hands in the air briefly and walking toward the far sidewalk.   Id.

The dash camera video from Officer McCroden's patrol car shows Officer Hansen with Derrik standing on the passenger side of Officer Hansen's patrol car.   Because the camera is picking up audio from Officer McCroden's encounter with Desirae some twenty feet away, there is no audio of Officer Hansen's conversation with Mr. Ehlers.   (Exhibit 19 at 21:00:39 to 21:00:43).   At this point it appears as though Officer Hansen is gesturing in the direction of the Civic Center and Mr. Ehlers is off-screen to the right.   Id. at 21:00:44 to 21:00:50.   At this juncture, the woman who had accompanied Mr. Ehlers to the area where Officer Hansen and Derrik were standing, turned and calmly walked in the direction of the Civic Center.   Id. at 21:00:50-54.   Officer Hansen can be seen gesturing and speaking to someone on the driver's side of Officer McCroden's patrol car.   Id. at 21:01:05-06.   At this point, Mr. Ehlers walks toward the Civic Center and gestures "o.k." or "whatever" raising his arms into the air.   Id. at 21:01:06-09.

From the perspective of Officer Dirkes' patrol car camera, Mr. Ehlers can be seen walking toward the Civic Center.   (Exhibit 20 at 21:00:25-26).   Officer Dirkes' microphone was on at this time.   (Docket 52-10 at p. 2 (62:18-19)).   Officer Dirkes testified that as he pulled up in his patrol car, "Officer Hansen

5

indicated a gentleman, pointed at him, and said he needed to be arrested. . . .
Take him to jail.   Arrest him.   Something along those lines.   I don't remember
the specific wording. . . . he needed to go to jail.   Those were my instructions
upon getting out of the car. . . . To arrest him."   (Docket 46-8 at p. 11 (53:8-19)).
Officer Dirkes testified that as Mr. Ehlers walked past him from the area of
Officer Hansen's patrol car that Mr. Ehlers said "[f]uck you, I'm not going to jail."
(Docket 52-10 at p. 2 (62:11-17)).   While Officer Dirkes' open microphone picked
up other dialogue throughout the encounter, neither Officer Hansen's
instructions nor Mr. Ehlers' statements are on the recording.   See Exhibit 20 at
21:00:25-30.   Mr. Ehlers denies having made any statement or that Officer
Hansen instructed Officer Dirkes to make an arrest.   (Docket 59 at p. 5).   For
summary judgment purposes the court must conclude these statements were
not made by either Officer Hansen or Mr. Ehlers.   Matsushita Elec. Indus. Co.,
475 U.S. at 587-88.

From Officer Dirkes' car camera video, as he is walking toward Mr. Ehlers,
the officer can be heard speaking twice in the direction of Mr. Ehlers "put your
hands behind your back."   (Exhibit 20 at 21:00:26-27).   As Mr. Ehlers
continued walking toward the Civic Center, Officer Dirkes grabbed him by the
neck and shoulder in the execution of a spin takedown.   Id. at 21:00:27-30.

Once on the ground, Mr. Ehlers is on his back with his arms in the air.
Id. at 21:00:32.   Officer Dirkes physically turned Mr. Ehlers over and he ended
up on his hands and knees holding a pair of glasses in his right hand.   Id. at

6

21:00:32-34.   Officer Dirkes is observed pushing down on Mr. Ehlers' head, shouting "put your hands behind your back."   Id. at 21:00:34-35.   Another officer appears to Mr. Ehlers' left, puts his right knee on Mr. Ehlers' left shoulder, grabs his left arm and puts Mr. Ehlers face down on the ground.   Id. at 21:00:35-37.   This officer then walked away.   Id. at 21:00:47-49.   Officer Ganser appears, grabs Mr. Ehlers' right leg and pulls it out from underneath him.   Id. at 21:00:44.   Officer Ganser places Mr. Ehlers' right leg across the back of his left leg, lifts and presses the left leg toward Mr. Ehlers' back, and presses him into the ground.   Id. at 21:00:45-50.   At this point South Dakota Highway Patrol Trooper Rybak approaches Mr. Ehlers' left side, grabs his left arm from underneath his body and pulls the left arm up high into a fixed arm bar position.[2]   Id. at 21:00:53-21:01:00.

Officer Dirkes readied his taser to "drive stun" and placed the prongs against the bare skin of Mr. Ehlers' lower back.   (Docket 59 at p. 6).   Someone can be heard yelling "let him have it."   Id.   Because the safety switch was on, when Officer Dirkes attempted to engage his taser it did not fire.   Id.   Officer Hansen felt Mr. Ehlers was not resisting and instructed Officer Dirkes not to use the taser on Mr. Ehlers.   Id.   Mr. Ehlers claims he was then shocked by the

---

[2]"An arm bar . . . is a lockout of the arm to where it cannot move or flex." (Docket 52-11 at p. 2 (36:9-10).

taser.[3]   Id.   The taser can be heard being activated by Officer Dirkes.   (Exhibit 20 at 21:00:58-21:00:00).

Mr. Ehlers was handcuffed and arrested for resisting arrest[4] and obstructing a police officer.[5]   (Docket 59 at p. 6).   Mr. Ehlers alleges he suffered an injury to his shoulders and left knee.   Id.   The left shoulder injuries include a torn rotator cuff, weakness and pain.   Id. at p. 7.   These injuries are not likely to improve.   Id.

1.   BEFORE THE TAKEDOWN, OTHER OFFICERS AND BYSTANDERS WERE CALMLY STANDING AROUND

In the analysis section of the report, Magistrate Judge Wollmann concluded "Mr. Ehlers did not present any signs of violence or threat of violence and did not create any danger of physical injury.   Before the takedown, other

---

[3]Officer Dirkes claims to have moved his taser just in time so as to not shock Mr. Ehlers.   Because the court must view the evidence in the light most favorable to Mr. Ehlers, the officer's assertion is not relevant to the analysis. Matsushita Elec. Indus. Co., 475 U.S. at 587-88.

[4]SDCL § 22-11-4 provides: "Any person who intentionally prevents or attempts to prevent a law enforcement officer, acting under color of authority, from effecting an arrest of the actor or another, by: (1) Using or threatening to use physical force or violence against the law enforcement officer or any other person; or (2) Using any other means which creates a substantial risk of causing physical injury to the law enforcement officer or any other person; is guilty of resisting arrest.   Resisting arrest is a Class 1 misdemeanor."

[5]SDCL § 22-11-6 provides "Except as provided in §§ 22-11-4 . . . any person who, by using or threatening to use violence, force, or physical interference or obstacle, intentionally obstructs, impairs, or hinders the enforcement of the criminal laws or the preservation of the peace by a law enforcement officer . . . acting under color of authority . . . is guilty of obstructing a law enforcement officer . . . . Obstructing a law enforcement officer . . . is a Class 1 misdemeanor."

8

officers and bystanders were calmly standing around.   That is not an environment that suggests Mr. Ehlers was threatening or creating a risk of physical injury."   Id. at p. 21.   Defendants object to the magistrate judge's observation and conclusion that "[b]efore the takedown, other officers and bystanders were calmly standing around."   (Docket 61 at p. 20).   Defendants argue this statement "is simply a misstatement of any of the record . . . including the dash camera videos."   Id.   Based on two separate dash camera videos the defendants assert "[n]ot a single officer can be seen 'calmly standing around.' " Id. at pp. 20-21.

The court reviewed the relevant portions of the dash camera videos from the patrol cars of Officer McCroden and Officer Dirkes.   (Exhibits 19 at 21:00 to 21:02 and Exhibit 20 at 21:00:21 to 21:03).   The court finds the report is an accurate statement of what was occurring.   There was at least one woman who walked calmly in front of Mr. Ehlers toward the Civic Center and two uniformed patrol officers who seemed to be milling around with no real purpose.   Each of these individuals can be described as "calmly standing around."   (Docket 61 at p. 20).   It is true that Officer Hansen can be seen placing Derrik in an officer's patrol car and Officer McCroden was dealing with Desirae on the ground approximately twenty feet in front of Officer Dirkes' patrol car.   This activity does not affect the court's assessment of the other individuals' calm behavior.

Defendant's objection is overruled.

9

2.    THAT IT IS UNCLEAR WHETHER OFFICER HANSEN OR
      OFFICER DIRKES MADE THE DECISION TO ARREST
      MR. EHLERS

Defendants object to the magistrate judge's finding it was unclear which officer "made the probable cause analysis and decision to arrest Mr. Ehlers." (Docket 61 at p. 28) (referencing Docket 59 at p. 18).   Defendants argue "the testimony related to the probable cause decision is undisputed. . . . Both Officer Dirkes and Officer Hansen agree that Officer Hansen made the decision to arrest Ehlers."   Id.

Viewing the evidence "in the light most favorable to Mr. Ehlers," Magistrate Judge Wollmann concluded "Officer Dirkes was not ordered to arrest Mr. Ehlers."   (Docket 59 at p. 17).   The magistrate judge also found that "Mr. Ehlers denied that Officer Hansen ordered Officer Dirkes" to arrest him.   Id. at p. 18.   Finally, the magistrate judge noted that "[w]hen Officer Dirkes arrived on scene, he immediately began walking toward Mr. Ehlers commanding him to put his hands behind his back."   Id.   None of these findings by the magistrate judge were objected to by the defendants.   In accord with 28 U.S.C. § 636(b)(1), these factual statements developed by the magistrate judge are adopted for summary judgment analysis purposes.

As described above, Officer Dirkes testified that as he pulled up in his patrol car, Officer Hansen directed him to arrest Mr. Ehlers using specific words to that effect.   (Docket 46-8 at p. 11 (53:8-19)).   Defendants have not directed the court to any video camera or officer microphone recording which supports

10

Officer Dirkes' testimony.   Mr. Ehlers denies any such statements were made. (Docket 59 at p. 5).   On the status of this record, it is not clear that Officer Hansen directed Officer Dirkes to arrest Mr. Ehlers.   <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587-88.   For summary judgment purposes, it is clear that based on the observations he made, Officer Dirkes had no independent grounds to arrest Mr. Ehlers.   <u>Id.</u>

Defendant's objection is overruled.

**B.    MAGISTRATE JUDGE'S CONCLUSIONS OF LAW**

Plaintiff's objections to the magistrate judge's conclusions of law are:

1.    The magistrate judge erred as a matter of law in concluding that Trooper Rybak's use of force was reasonable.   (Docket 60 at p. 2); and

2.    The magistrate judge erred as a matter of law in concluding plaintiff is not entitled to pursue a claim for punitive damages.   <u>Id.</u> at p. 4.

Defendants' objections to the magistrate judge's conclusions of law are:

1.    The magistrate judge erred as a matter of law in concluding that Officer Hansen did not have probable cause to arrest Mr. Ehlers.   (Docket 61 at pp. 19 & 25); and

2.    The magistrate judge erred as a matter of law in concluding that Officer Dirkes did not have probable cause to arrest Mr. Ehlers.   <u>Id.</u> at pp. 28-29.

Each objection will be addressed separately.

C.     **PLAINTIFF'S OBJECTIONS**

1.     THE MAGISTRATE JUDGE ERRED AS A MATTER OF
       LAW IN CONCLUDING THAT TROOPER RYBAK'S USE
       OF FORCE WAS REASONABLE

Plaintiff argues the undisputed "evidence shows that Trooper Rybak pulled

out the Plaintiff's left arm [from underneath him], locked his elbow, and shoved

his arm forward before placing it behind the Plaintiff's right arm."   (Docket 60 at

p. 2) (referencing Trooper Rybak's car video, Exhibit 18, and Officer Dirkes' car

video, Exhibit 20).   Plaintiff asserts that even Trooper Rybak acknowledges the

force he employed was unreasonable.   Id. (citing Trooper Rybak's deposition,

Docket 52-11 at p. 2 (36:20-24)).   Plaintiff contends that even if "Trooper Rybak

did mistakenly believe that the Plaintiff was resisting arrest, the control

maneuver utilized . . . was nonetheless unreasonable because such a maneuver

is not appropriate."   (Docket 60 at p. 3).

The magistrate judge concluded that "[f]rom Trooper Rybak's point of view,

considering the totality of the circumstances at the time, upon his arrival on

scene Mr. Ehlers was on the ground with his left arm under his body.   Trooper

Rybak mistakenly, but reasonably believed that Mr. Ehlers was resisting the

officer's efforts to secure his left arm.   Therefore, as a matter of law, Trooper

Rybak's actions were not objectively unreasonable."   (Docket 59 at p. 14).   The

magistrate judge relied on Carpenter v. Gage, 686 F.3d 644 (8th Cir. 2012) and

Janis v. Biesheuvel, 428 F.3d 795 (8th Cir. 2005) to arrive at this conclusion.

Id.

Carpenter instructs that "[t]he reasonableness of a use of force depends on the particular facts and circumstances, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " Carpenter, 686 F.3d at 649 (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). "Law enforcement officers may use physical force to subdue an arrestee when he fails to comply with orders to lie still during handcuffing." Id. The court in Carpenter concluded that an officer who reasonably perceives an individual's conduct as resisting arrest may "respond[] with an amount of force that was reasonable to effect the arrest." Id. at 650 (referencing McKenney v. Harrison, 635 F.3d 354, 360 (8th Cir. 2011) ("We must judge the reasonableness of the force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' and we must make 'allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.' " (citing Graham, 490 U.S. at 396-97).

Plaintiff argues the facts presented in his case are different from those presented in Janis. (Docket 60 at p. 3). In Janis, the court found removing an elderly man suspected of driving while intoxicated from a vehicle which had been the subject of a 30-minute chase and shoving him face first into the concrete highway was reasonable. "At the time they pulled Richards from the car . . .

13

officers did not know that [the driver's] actions were the result of a diabetic seizure, not intoxication.   Further, the officers did not know what level of risk [he] posed (i.e., whether he possessed a weapon)."   <u>Janis</u>, 428 F.3d at 800.   "In light of the officers' knowledge at the time of the events, the evidence does not prove that the officers' actions constituted excessive force."   <u>Id.</u>

Mr. Ehlers claims he "was already lying in a prone position and attempting to comply with officer commands."   (Docket 60 at p. 3).   "Unlike the driver in <u>Janis</u>," Mr. Ehlers claims he "did not exhibit any dangerous behavior and complied with law enforcement to the best of his ability."   <u>Id.</u> at p. 4.

Trooper Rybak's car camera shows that as he approached the location where an individual can be seen lying face down with two officers on his back, one of those officers was shouting "put your hands behind your back."   (Exhibit 20 at 21:00:34-35).   Trooper Rybak could see that Mr. Ehler's left arm was not exposed and was underneath his body.   It was reasonable for Trooper Rybak to grab Ehler's left arm, pull it from beneath his body and prepare the arm for handcuffing.   <u>Carpenter</u>, 686 F.3d at 650; <u>Janis</u>, 428 F.3d at 800.

It was neither necessary nor a reasonable use of force for Trooper Rybak to place Mr. Ehlers' left arm in a locked position and push it forward toward his head prior to swinging the arm toward the small of his back for handcuffing. Trooper Rybak admitted as much when he testified it would not be appropriate for purposes of handcuffing a suspect to have the suspect's arm "locked up" behind him, and then have that arm "push[ed] forward [toward the suspect's

14

head] before bringing it back down to engage the handcuffs."   (Docket 52-11 at

p. 2 (36:20-24)).   Trooper Rybak's conduct and his own admission are

"sufficient for a jury to find that the officer['s] actions were unreasonable."

<u>Janis</u>, 428 F.3d at 800.

Plaintiff's objection to the report and recommendation is sustained.

Trooper Rybak is not entitled to qualified immunity against Mr. Ehlers' excessive

force claim.   The report is rejected to the extent it recommends dismissal of Mr.

Ehlers' claim against Trooper Rybak.

> 2.   THE MAGISTRATE JUDGE ERRED AS A MATTER OF
>       LAW IN CONCLUDING PLAINTIFF IS NOT ENTITLED TO
>       PURSUE A CLAIM FOR PUNITIVE DAMAGES

Plaintiff's challenge to the report and recommendation on this basis is

deferred until the court determines whether the defendants' challenges warrant

rejection of the report and recommendation and dismissal of plaintiff's claims

against defendants Dirkes and Hansen.

**D.     DEFENDANTS' OBJECTIONS**

Defendants' objections use broad categories of law to challenge the report

and recommendation without making particularized objections to the

conclusions of law.   The court summarizes defendants' objections as follows:

> 1.   Whether there is a clearly established constitutional
>       right that an arrestee may not be taken down when his
>       actions can be interpreted as resistance.   (Docket 61 at
>       p. 9);
>
> 2.   Whether Officer Dirkes' use of a taser violated a clearly
>       established right.   <u>Id.</u> at pp. 14-15;

    3.     Whether Officer Hansen had arguable probable cause to arrest Mr. Ehlers.   Id. at pp. 21, 25 & 27; and

    4.     Whether Officer Hansen and Officer Dirkes are entitled to qualified immunity.   Id. at p. 18.

Each of the defendants' objections will be separately addressed.

    1.     WHETHER THERE IS A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT THAT AN ARRESTEE MAY NOT BE TAKEN DOWN WHEN HIS ACTIONS CAN BE INTERPRETED AS RESISTANCE

Defendants claim the magistrate judge erred as a matter of law because "[t]here is no 'clearly established' constitutional right that an arrestee may not be taken down when their actions are interpreted as resistance."   Id. at p. 9.   The defendants claim this error occurred because the magistrate judge failed to include Carpenter, 686 F.3d 644, in the analysis of Officer Dirkes' actions.   Id.

The defendants assertion that Carpenter should have been considered by the magistrate judge and results in judgment in defendants' favor is misplaced. The magistrate judge found that Mr. Ehlers "was exhibiting no criminal activity. . . . wasn't told he was under arrest, or that he would be arrested.   He wasn't attempting to evade arrest by flight."   (Docket 59 at p. 12).   "The other officers' demeanor and the lack of apparent concern about Mr. Ehlers indicates that he wasn't a threat to the safety of other officers."   Id.   Carpenter involves a scenario significantly different from the situation confronting Officer Dirkes.   In Carpenter, the individual had threatened to use a baseball bat on a paramedic

16

and from the officers' perspective may have been heading back into his home to obtain a firearm.   Carpenter, 686 F.3d at 649.

The magistrate judge equated Mr. Ehlers' conduct to be closely akin to the conduct of the plaintiff in Peterson v. Kopp, 754 F.3d 594 (8th Cir. 2014). (Docket 59 at pp. 11-12).   "Peterson was a non-fleeing, non-resisting, non-violent misdemeanant."   Peterson, 754 F.3d at 600.   "The Supreme Court has explained that 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.' . . . An officer's use of force will violate the Fourth Amendment if it is not 'objectively reasonable.' "   Id. (citing Graham, 490 U.S. at 396-397).

Although not cited by the magistrate judge or acknowledged by the parties, Small v. McCrystal, 708 F.3d 997 (8th Cir. 2013), is also factually similar to Mr. Ehlers' conduct.   Mr. Small "did not pose an immediate threat to the safety of the officers or others. . . . was walking away from them . . . He was not in flight or resisting arrest.   McCrystal had not advised him he was under arrest."   Id. at 1005.   "It was unreasonable for McCrystal to use more than de minimis force against Small by running and tackling him from behind without warning."   Id. (referencing Shannon v. Koehler, 616 F.3d 855, 863 (8th Cir. 2010); Bauer v. Norris, 713 F.2d 408, 412-13 (8th Cir. 1983) (establishing that no use of force was reasonable where the plaintiffs were charged with disorderly conduct, there was no evidence that any crime had been committed, and no evidence that the

17

plaintiffs physically resisted or threatened the officer—even though the plaintiffs were "argumentative, vituperative, and threatened legal action").

Mr. Ehlers posed no immediate threat to the officers' safety and he was not a flight risk.   The magistrate judge correctly applied the law and concluded that a jury question exists as to whether Officer Dirkes' conduct was unreasonable under the circumstances.   (Docket 59 at pp. 11-12).   Defendants' objection is overruled.

    2.    WHETHER OFFICER DIRKES' USE OF A TASER
          VIOLATED A CLEARLY ESTABLISHED RIGHT

The defendants argue the magistrate judge erred because the use of a taser when an individual is resisting arrest "is not a violation of a clearly established right."   (Docket 61 at pp. 14-15).   Defendants cite Hollingsworth v. City of St. Ann, 800 F.3d 985, 990 (8th Cir. 2015) (citing LaCross v. City of Duluth, 713 F.3d 1155, 1158 (8th Cir. 2013)), as support for their argument. Id. at 14.   The court in Hollingsworth was evaluating the status of the law in 2009 and when the United States Court of Appeals for the Eighth Circuit concluded that the state of the law was unresolved as to whether the use of a taser causing a "*de minimis injury* could sustain an excessive force claim under the Fourth Amendment . . . ."   Hollingsworth, 800 F.3d at 991.

What is missing from defendants' argument is an acknowledgement that at the time Officer Dirkes' applied the taser, Mr. Ehlers was no longer resisting arrest and *any* use of a taser would be unreasonable.   "When a suspect actively

18

resists arrest, the police may use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." Rudlaff v. Gillispie, 791 F.3d 638, 642 (6th Cir. 2015).

Further, it is unclear whether Mr. Ehlers' left knee injury and rotator cuff strain occurred from being aggressively thrown to the ground by Officer Dirkes or whether Officer Rybak's use of an arm-bar maneuver caused the injury to Mr. Ehlers' shoulder.   Viewing the evidence in the light most favorable to Mr. Ehlers as the non-moving party, the court cannot conclude as a matter of law that Mr. Ehlers' injuries were *de minimus* so as to grant Officer Dirkes dismissal based on qualified immunity.   Peterson, 754 F.3d at 598.

Defendants' objection is overruled.

3. WHETHER OFFICER HANSEN HAD ARGUABLE
PROBABLE CAUSE TO ARREST MR. EHLERS

Mr. Ehlers was arrested for obstructing a police officer and resisting arrest.   (Docket 61 at p. 21).   Defendants argue the magistrate judge misapplied the law in concluding Officer Hansen had no "arguable probable cause" to arrest Mr. Ehlers for either one of these offenses.   Id. at pp. 21 & 27. The defendants submit that the magistrate judge "concluded that it was reasonable to believe Ehlers was resisting based upon his conduct at the scene." Id. at p. 27 (citing Docket 59 at p. 14).

The magistrate judge's statement is taken out of context.   What the report states is that "Trooper Rybak mistakenly, but reasonably believed that Mr.

19

Ehlers was resisting the officer's efforts to secure his left arm."   (Docket 59 at p. 14).   This is a far cry from a finding that Officer Hansen reasonably believed he had arguable probable cause to arrest Mr. Ehlers for resisting arrest.   "Actual resistance" to the process of being arrested "is not the actionable element of resisting arrest . . . . Rather, it requires the threat of force or violence [an expression or indication to inflict pain, injury . . . or punishment on an officer]." State v. Sullivan, 673 N.W.2d 288, 291 (S.D. 2003).   The individual's actions must "be tantamount to a *threat* of force or violence" against the officer.   Id. (emphasis in original).

The magistrate judge concluded that "Mr. Ehlers delayed approximately 20 seconds before moving to the far sidewalk."   (Docket 59 at p. 20).   The report concluded "[o]n Mr. Ehlers' facts, it was not objectively reasonable for Officer Hansen to believe that Mr. Ehlers intended to hinder Officer Hanson in the performance of his duties."   Id. at pp. 20-21.

The defendants claim that for the offense of obstruction of a police officer "[t]here is no duration requirement in SDCL § 22-11-6.   Nor is there a requirement that an arrestee stand directly in the path of the officer."   (Docket 61 at p. 24).   Defendants do not cite the court to any cases which support defendants' argument with facts similar to those presented in this case.

The magistrate judge considered cases analogous to the facts presented here.   (Docket 59 at p. 20) (referencing State v. Wiedman, 321 N.W.2d 539 (S.D. 1982) and State v. Hodges, 631 N.W.2d 206 (S.D. 2001)).   In Wiedman, "there

20

was a head-to-head confrontation with appellant standing directly in the path of the officer and refusing to move.   When Officer Morrison gave appellant a direct order to move and go home, appellant had no further right to be there and his refusal to move was a physical interference with the officer's attempt to disperse this drunken, unruly mob and preserve the peace."   <u>Wiedeman</u>, 321 N.W.2d at 541-42 (S.D. 1982).   <u>See</u> <u>also</u> <u>Hodges</u>, 631 N.W.2d at 211 (the individual fled the site of a traffic stop, ran into a bathroom and refused to come out).

Contrary to the defendants' assertions, Mr. Ehlers did not confront Officer Hansen, did not interfere with the arrest of Derrik and did not refuse to return to the curb.   There is no reasonable interpretation of this undisputed evidence which constituted "arguable probable cause" to arrest Mr. Ehlers for obstruction. <u>Walker v. City of Pine Bluff</u>, 414 F.3d 989, 992 (8th Cir. 2005).

Defendants' objection is overruled.

4.   WHETHER OFFICER HANSEN AND OFFICER DIRKES
ARE ENTITLED TO QUALIFIED IMMUNITY

The defendants argue that "Magistrate Wollmann has not found, even assuming the facts in a light most favorable to Ehlers, that the conduct of Officers Dirkes or Hansen was 'plainly incompetent,' a 'knowing violation of the law,' or conduct which is 'intentional or reckless, thereby shocking the conscience.'   Without such a finding, summary judgment is appropriate for each of the Defendants, notwithstanding whether or not the Court believes their conduct was questionable or negligent."   (Docket 61 at p. 18).

"Qualified immunity protects governmental officials from liability for civil damages when they are performing discretionary functions and their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 671 (8th Cir. 2007) (referencing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   "This immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.' "   Id. at 671-72 (citing Malley v. Briggs, 475 U.S. 335, 341(1986)).   "Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim 'is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right."   Walker, 414 F.3d at 992 (citing Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.1996)).

"Reasonableness" is the measure of an officer's conduct under a Fourth Amendment qualified immunity analysis.   Reasonableness is judged by "whether the officer should have known that the arrest violated plaintiff's clearly established right."   Id.   Because "no reasonable police officer could believe that he had arguable probable cause to arrest such an on-looker in this situation, for obstruction . . . [,]" denial of defendants' motion for qualified immunity protection is proper.   Id. at 993 (referencing Saucier v. Katz, 533 U.S. 194, 202 (2001)). The court is not required to find the officers "plainly incompetent" or "intentional

22

or reckless, thereby shocking the conscience" as suggested by the defendants. (Docket 61 at p. 18).

Defendants' objection is overruled.

**E.   PLAINTIFF'S OBJECTION REGARDING PUNITIVE DAMAGES**

2.   THE MAGISTRATE JUDGE ERRED AS A MATTER OF LAW IN CONCLUDING PLAINTIFF IS NOT ENTITLED TO PURSUE A CLAIM FOR PUNITIVE DAMAGES

The magistrate judge recommends dismissal of Mr. Ehlers' claim for punitive damages (1) because Trooper Rybak is no longer a defendant; and (2) because "[e]ven in the light most favorable to Mr. Ehlers, there are no facts to support that Officer Dirkes or Officer Hansen's conduct was motivated by evil motive or intent."   (Docket 59 at p. 31).   Mr. Ehlers claims the magistrate judge erred by concluding the officers' conduct did not warrant permitting plaintiff's claim for punitive damages to proceed to trial.   (Docket 60 at p. 4).   He asserts that while the magistrate judge may have properly evaluated "evil motive or intent," the magistrate judge failed to consider whether the "conduct of the officers amounted to reckless indifference."   Id.   In support of his argument, plaintiff references Walters v. Grossheim, 990 F.2d 381, 385 (8th Cir. 1993) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983) (punitive damages are available "when the defendant's conduct . . . involves reckless or callous indifference to the federally protected rights of others.") (emphasis removed).

The report and recommendation is now inconsistent with the court's order because of the finding that Trooper Rybak is not entitled to qualified immunity

23

on Mr. Ehlers' excessive force claim.   Additionally, the report and recommendation fails to consider plaintiff's claim for punitive damages based on reckless indifference to his federally protected rights by Officers Hansen and Dirkes.   Plaintiff's complaint specifically seeks punitive damages alleging "the Defendants acted with reckless disregard to the Plaintiff's constitutional rights." (Docket 1 at ¶ 29).   Plaintiff briefed the issue of punitive damages on the basis of reckless indifference as part of his resistance to the defendants' motion for summary judgment.   (Docket 49 at pp. 14-15).

"Punitive damages may be assessed in a § 1983 case when a 'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' " Swipies v. Kofka, 419 F.3d 709, 717-18 (8th Cir. 2005) (citing Smith, 461 U.S. at 56.   "[T]o prove reckless indifference, requires evidence that the defendant acted 'in the face of a perceived risk that [his or her] actions [would] violate federal law.' "   Id. at 718 (citing Kolstad v. American Dental Association, 527 U.S. 526, 536 (1999)).   "Reckless indifference," when considered in light of a § 1983 claim equates "to a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.' "   Kolstad, 527 U.S. at 536 (citing Smith, 461 U.S. at 37 & 41).

The officers "motive[s] [are] . . . question[s] of fact."   Lee ex rel. Lee v. Borders, 764 F.3d 966, 974 (8th Cir. 2014).   For this reason, plaintiff's objection is sustained.   The report is rejected to the extent it recommends dismissal of Mr.

24

Ehler's punitive damages claim against Officer Dirkes, Officer Hansen and Trooper Rybak.

**ORDER**

Based on the above analysis, it is

ORDERED that plaintiff's objections (Docket 60) to the report and recommendation are overruled in part and sustained in part consistent with this order.

IT IS FURTHER ORDERED that defendants' objections (Dockets 61) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 59) is adopted in part and rejected in part consistent with this order.

IT IS FURTHER ORDERED that defendant Trooper Rybak's motion for summary judgment (Docket 39) is granted in part and denied in part.

IT IS FURTHER ORDERED that the motion for summary judgment of defendants City of Rapid City, Officer Dirkes and Officer Hansen (Docket 43) is granted in part and denied in part.

IT IS FURTHER ORDERED that plaintiff's complaint as it relates to all claims against the City of Rapid City is dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's complaint as it relates to claims against Officer Dirkes, Officer Hansen and Trooper Rybak in their official capacity is dismissed with prejudice.

25

IT IS FURTHER ORDERED that plaintiff's complaint as it relates to the § 1983 unlawful or malicious prosecution claims against Officer Dirkes, Officer Hansen and Trooper Rybak is dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's complaint as it relates to the state law claims of false imprisonment, abuse of process and intentional infliction of emotional distress against Officer Dirkes, Officer Hansen and Trooper Rybak is dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's complaint asserting liability against Officer Dirkes, Officer Hansen and Trooper Rybak as joint tortfeasors is dismissed with prejudice.

IT IS FURTHER ORDERED that Officer Dirkes' motion for summary judgment on the basis of qualified immunity as to plaintiff's § 1983 excessive force claim is denied.

IT IS FURTHER ORDERED that plaintiff's complaint as it relates to the § 1983 excessive force claim against Officer Hansen is dismissed with prejudice.

IT IS FURTHER ORDERED that Trooper Rybak's motion for summary judgment on the basis of qualified immunity as to plaintiff's § 1983 excessive force claim is denied.

IT IS FURTHER ORDERED that Officer Dirkes' motion for summary judgment on the basis of qualified immunity as to plaintiff's § 1983 unlawful arrest claim is denied.

IT IS FURTHER ORDERED that Officer Hansen's motion for summary judgment on the basis of qualified immunity as to plaintiff's § 1983 unlawful arrest claim is denied.

IT IS FURTHER ORDERED that plaintiff's complaint as it relates to the § 1983 unlawful arrest claim against Trooper Rybak is dismissed with prejudice.

IT IS FURTHER ORDERED that Officer Dirkes' motion for summary judgment as to plaintiff's state law claims of assault and battery is denied.

IT IS FURTHER ORDERED that plaintiff's complaint as it relates to the state law claims of assault and battery against Officer Hansen is dismissed with prejudice.

IT IS FURTHER ORDERED that Trooper Rybak's motion for summary judgment as to plaintiff's state law claims of assault and battery is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment as to plaintiff's complaint seeking punitive damages is denied.

Dated March 8, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE